Brainard v. Town of Colchester.

NATHANIEL F. BRAINARD *vs.* THE TOWN OF COLCHESTER.

The statute of 1702 with regard to gifts for charitable uses provides that all lands and estates that have been or shall be given for the maintenance of the ministry of the gospel or for any other public or charitable use shall for ever remain and be continued to such use and shall be exempt from the payment of rates. An act passed in 1859 provides that whenever any ecclesiastical or other public or charitable institution has conveyed or may hereafter convey by lease or other conveyance any real estate, from which such institution does not receive an annual rent, or where such conveyance is intended to be perpetual, such real estate shall not be exempt from taxation. In 1774 certain land was devised to an ecclesiastical society for the support of the ministry. In 1804 the society leased it for the term of 999 years, for a gross sum paid at the time, the lessee covenanting to keep up a certain building on the premises during the term, but the lease reserving no annual rent. Held, 1. That the act of 1859 was not unconstitutional in its application to lands previously given for charitable uses. 2. That under this statute the land in question became liable to taxation.

The case of *Landon v. Town of Litchfield*, 11 Conn., 251, commented on, and disapproved.

A lease for 999 years for a gross sum is for all practical purposes a conveyance in fee-simple. Such a lease of lands given for pious uses under the statute of 1702 is in fraud of the statute, and would in most cases be in fraud of the donor.

ASSUMPSIT, to recover back the amount of a tax laid by the town of Colchester, and which the plaintiff had been compelled

to pay, on certain land within that town, claimed by him to be exempt from taxation. The case was reserved by the superior court, on facts found, for the advice of this court. The facts are sufficiently stated in the opinion.

The statute of 1702, under which the plaintiff claimed the land to be exempt, is as follows: " That all such lands, tenements, hereditaments and other estates, that either formerly have been or hereafter shall be given and granted, either by the General Assembly of this colony, or by any town, village, or particular person or persons, for the maintenance of the ministry of the gospel in any part of this colony, or schools of learning, or for the relief of poor people, or for any other public and charitable use, shall for ever remain and be continued to the use or uses to which such lands, tenements, hereditaments or other estates have been or shall be given and granted, according to the true intent and meaning of the grantors, and to no other use whatsoever; and also be exempted out of the general lists of estates, and free from payment of rates." In the revision of the statutes in 1821 this statute with a slight change of phraseology was re-enacted without the clause exempting the property described in it from taxation, while a general act repealed all statutes not embraced in the revision, with a provision that the repeal should not affect vested rights. In 1859 the following act was passed: " That whenever any ecclesiastical, or any other public or charitable institution, has conveyed or may hereafter convey, by lease or other conveyance, any real estate, from which said estate said society or institution do not receive an annual income or rent, or where such conveyance is intended to be a perpetual conveyance, said real estate so conveyed shall not be exempt from taxation."

*Hovey* and *Wait*, with whom was *Starkweather*, for the plaintiff.

*Halsey* and *Pratt*, for the defendants.

DUTTON, J. In this case a tax was levied by the town of Colchester on land which had in 1774 been devised to the First Ecclesiastical Society in Colchester, in conformity with the provisions of the statute of 1702. In 1804 the society

made a lease of it to Daniel Taylor for nine hundred and ninety-nine years, in consideration of seven hundred and twenty-five pounds; the lessee covenanting to keep a barn on the premises in good and tenantable repair, which covenant has been kept. The property has since been conveyed in fee-simple, and came as such into the hands of the defendant. The consideration money has been held by the society, and converted into bank stock, which under the statute is exempt from taxation.

Is this land exempt from taxation?

If the matter were *res integra* we should not hesitate to say at once, that by the statute of 1821 it became liable to taxation. The course of reasoning which in several instances has pronounced that statute unconstitutional, as it regards such conveyances, is not satisfactory to us. We agree fully with Judge Ellsworth, when he says, in the case of *The Town of New Haven* v. *Sheffield*, 30 Conn., 171 : " The chief object in the enactment of that statute was not so much to exempt certain estates from taxation, as to confirm and perpetuate the estates referred to in it, with certain attending privileges." We go further, and say, that that was the sole legal effect which the legislature intended to give it. This statute has been read as if the authors of it intended to proclaim to all pious and benevolent persons, " if you will give property for the maintenance of the ministry of the Gospel, or schools of learning, or for the relief of poor people, or for any other public or charitable use, it shall remain for ever free from taxation;" and it is therefore urged that it would be a violation of an obligation to, and a fraud upon, all charitable donors, to subject such property afterwards to the burdens of taxation. But it is obvious that the legislature used no such language. There is nothing in the act which looks like an offer to donors. The exemption was to apply to estates that had been given, where of course no such inducement had been held out, as well as to future gifts. Indeed there is nothing in the language of the statute which makes it differ from ordinary statutes, specifying what should and what should not be subject to taxation. By the statute of 1821 ministers of the gospel were exempt from

taxation. We do not see why, by the same course of reasoning, a member of that profession might not successfully contend that he became a minister of the Gospel relying on the engagement of the legislature that he should be exempt from taxation till he should quit the profession. Exemptions of this kind are contrary to public policy, which requires that all property and all persons should bear a proportionate share of the burdens of society. It is to be regretted that legislatures should ever resort to this indirect mode of conferring favors. It is always much more satisfactory to have their benefactions definite and direct. The other mode is resorted to, to conceal from the public the extent of the donation, for fear of causing dissatisfaction. The consequence, however, often is, that valuable privileges are enjoyed without gratitude, and regarded by others with envy and dissatisfaction. We know of but one case, that of *Landon* v. *Town of Litchfield*, 11 Conn., 251, in which this court has been called upon to decide whether the privilege conferred by the statute of 1702 was revoked by the statute of 1821. That decision was made by three only of the five judges who then constituted the court. We think the views of Church, J., who gave a dissenting opinion, are the most satisfactory. Whether, if the same point was directly presented, we should feel bound to follow that case as an authority, or whether we should feel at liberty to adopt the policy of equalizing the burdens of taxation, we do not feel called upon to determine. We should, however, be as averse to deny the binding effect of pledges really given by legislation, as in the case of *New Jersey* v. *Wilson*, 7 Cranch, 164, as to yield assent to those which are merely imaginary.

We prefer to rest our decision in this case on the statute of 1859. (Acts of 1859, Ch. 61.) That act provides that whenever any ecclesiastical or other public or charitable institution has conveyed or may hereafter convey, by lease or other conveyance, any real estate, from which said estate said society or institution do not receive an annual income or rent, or where such conveyance is intended to be a perpetual conveyance, said real estate so conveyed shall not be exempt from taxation. It has not been and can not be denied that this statute was intended to apply to just such cases as the present. Is this stat-

ute unconstitutional? We think it is not. We have already said that one chief object of the statute of 1702 was to perpetuate estates given for charitable purposes. In the language of the statute, they are " to for ever remain and be continued to the use or uses" for which they were given, and "to no other use whatever." Now it is obvious that a conveyance for 999 years for a gross sum is in fraud of the statute. For all practical purposes it is a fee-simple. The reversion becomes a mere imaginary estate. No descendant of the grantor could with any certainty trace his title to it, and, if he could, his interest would ordinarily be too small a fraction of the whole to be of any value. The perpetuation of any estate for so long a period of time in a family, is contrary to the genius of our institutions and to the policy of the law.

Such a conveyance would in most instances be in fraud of the donor. His motive is to make the ecclesiastical society or the institution which is the object of his bounty perpetual, by providing for it an annual support. He wishes that the money which he has accumulated and which he must soon leave, may be the means of conferring benefits on his survivors through all time. The donee, by making what amounts to an absolute disposition of the property, disregards this purpose of the donor. The identity of the property is annihilated, and the avails can be squandered or applied to any other object.

If therefore the legislature was ever under any legal or moral obligation to leave this land free from taxation, it is discharged from it by this breach of the implied condition contained in the statute, and by this breach of good faith. To say the least, it is equitable and just under the circumstances that this land should bear its just proportion of the public burdens. Courts of equity always decline giving aid to a party who is using the law for the purposes of injustice.

This is an equitable action and the plaintiff can not recover by it money which it is right and just that the defendants should retain, however they may have come by it. *Goddard* v. *Town of Seymour*, 30 Conn., 394.

We advise that judgment be rendered for the defendants.

In this opinion the other judges concurred.