JAMES FLANNERY *vs.* GEORGE ROHRMAYER AND WIFE.

49  27
75  592

A lease of land for nine hundred and ninety-nine years is a chattel real.
The interest of a husband in such a lease owned by the wife is not one upon which a builders' lien can attach for buildings erected on the land under a contract with the husband.

CIVIL ACTION for the sale of certain land and buildings upon which a builders' lien had been foreclosed; brought to the City Court of the city of Hartford. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*E. Goodman,* for the plaintiff.

*H. O'Flaherty,* for the defendant.

LOOMIS, J. To entitle the petitioner to a sale of the land in question he must show that he has acquired an interest in it. The only interest claimed was derived from the filing of a mechanics' lien for services rendered to George

Rohrmayer in the erection of a dye-house on the land, and a subsequent foreclosure of that lien.

If George Rohrmayer had any interest subject to a mechanics' lien, then it must be conceded that the proceedings referred to had the effect to transfer that interest to the petitioner. But he had only such interest as the law gave him by virtue of his marriage in 1863 to Mary Rohrmayer, who afterwards on the 1st of December, 1877, became the owner of an unexpired term of a lease of the land for nine hundred and ninety-nine years. And what interest was that? Obviously not that of a tenant by the courtesy initiate, for only estates of inheritance are subject to such a tenancy. 1 Hilliard on Real Property, p. 117, § 15. The wife's estate was a mere chattel real. In *Goodwin* v. *Goodwin*, 33 Conn., 314, it was expressly decided that an estate in land for the term of nine hundred and ninety-nine years, subject to the payment of an annual rent, is personal property, and that the widow of the tenant could not claim dower out of it. It is elementary law that " chattels real are interests annexed to or concerning realty, as a lease for years of land; and the duration of the term of the lease is immaterial, provided it be fixed and determinate, and there be a reversion or remainder in fee in some other person. It is only personal estate if it be for a thousand years. Falling below the character and dignity of a freehold, it is regarded as a chattel interest, and is governed and descendible in the same manner." 2 Kent's Com., 342; Co. Litt., 46*a*. In *Gay's case*, 5 Mass., 419, it was held that an administrator may sell land holden by his intestate under a lease for nine hundred and ninety-nine years as personal property, without obtaining a license from the court as in the case of selling real estate for the payment of debts. In *Brewster* v. *Hill*, 1 N. Hamp., 350, it was held that a term for nine hundred and eighty-five years would pass by a will under the expression " personal estate."

At common law the husband could dispose of a chattel real during his life and it might be taken on execution for

his debts, but if undisposed of during his life it went to the wife if she survived him, but if he survived her it became his absolute property. 2 Kent's Com., 134; 1 Swift's Digest, 24.

But the common law in this respect no longer applies. The interest of the wife being personal property in contemplation of law, the husband's rights in respect to it are to be determined and limited by the act passed in 1849, which provides that "all the personal property of any married woman, married since the 22d day of June, 1849, and all the personal property thereafter acquired by a married woman, and the avails of any such property if sold, shall vest in the husband in trust for the following uses: to receive and enjoy the income thereof during his life, subject to the duty of expending from such income so much as may be necessary for the support of his wife during her life and of her children during their minority; and to apply any part of the principal thereof, which may be necessary, for the support of the wife, or otherwise with her written assent; and upon his decease the remainder of such trust property shall be transferred to the wife, if living, otherwise as the wife may by will have directed, or in default of such will, to those entitled by law to succeed to her intestate estate." General Statutes, Rev. of 1875, p. 186, sec. 3. Now if we concede, for the purpose of argument, that a leasehold estate may be subject to a mechanics' lien against the owner, or that such an interest as the husband had in it at common law might be so subject, yet in a case like the present, where the above statute applies, it is clear that a mechanics' lien cannot attach to the husband's interest, because it is utterly inconsistent with the trust to which the property is irrevocably devoted by the statute.

It will naturally be suggested that the foregoing reasons should have prevented the petitioner from obtaining his decree of foreclosure, especially as his petition for foreclosure came before this court by the defendant's motion in error. (46 Conn., 558.) But the finding in that case will show that no mention was made of a leasehold estate in

the wife.   On the contrary, it there appeared that she was absolute owner in fee; and the counsel for George Rohrmayer in his brief admitted that the husband was tenant by the courtesy.   That decision therefore was predicated on radically different facts.

And when the present case was tried in the court below no reference seems to have been made to the former finding and no estoppel was claimed on that account.   And even in the argument before this court no reference was made to this point by either of the parties.

The City Court is advised to render judgment for the respondents.

In this opinion CARPENTER, PARDEE and GRANGER, Js., concurred.

PARK, C. J.   I fully concur in the decision of the court in this case, but not in the opinion upon which it is based.

The statute creating the lien in question is as follows:— "Every building, in the construction or repair of which, or of any of its appurtenances, any person shall have a claim for materials furnished or services rendered exceeding twenty-five dollars in amount, shall, with the land on which the same may stand, be subject to the payment of such claim; and said claim shall be a lien on such land, building and appurtenances. . . Provided that no such lien shall attach to any estate not owned by the party against whom such claim exists."

It will be observed that this statute does not define what estates in houses and lands shall be the subject of lien.   All reference to this matter is contained in the last clause, which declares that "no such lien shall attach to any estate not owned by the party against whom such claim exists;" which seems to imply that the lien may attach to any estate in real property.   The lease in question has more than nine hundred years to run, and although technically it is denominated a "chattel real," yet in reality it approaches so nearly a fee that it would require the closest mathematical calcu-

lation to detect the difference in value, while it would need no little casuistry to explain in what the difference consists beyond the mere name. Judge DUTTON, in *Brainard* v. *Town of Colchester*, 31 Conn., 407, in speaking of such an estate says—" For all practical purposes it is a fee simple; the reversion becomes a mere imaginary estate." The owner of such an estate might erect structures upon the land of the most permanent character without danger of loss. He might safely grant the fee of the land and warrant the title, or do any other act that might be done by an owner in fee. Such being the case, it seems to me that if the owner should engage a mechanic to erect a building on the land, the statute would give the builder a lien upon it. If this be so it would seem to follow that it would equally give a lien as against a party having a life estate in such a lease; for his estate could not differ in any respect whatsoever, except in the merest technicality, from any other life estate in real property. It is true that a lease of land for life is regarded by the common law as of a higher grade, and theoretically of a possible longer duration than the lease of the same land for a thousand years, (a period longer than the long life of Methuselah), and that consequently there can be no life estate in such a lease; but this is one of the absurdities of the common law which had its origin in the feudal system. The difference is merely in name, and not in degree or substance. I think therefore that this statute would give the petitioner a lien on the husband's interest in the land in question were it not for other considerations than those stated in the opinion of the majority of the court.

It seems to me that the true reason why the petitioner's application should be denied is to be found in the fact that his lien attaches, if it attaches at all, to the respondent husband's interest in the lease of his wife, acquired by him solely through the marital relation.

We have a statute which provides that if a husband shall abandon his wife he shall be considered as abandoning all interest he may have acquired in her property by virtue of

his marriage. Gen. Statutes, p. 187, sec. 6. In view of this statute could a husband obtain a decree, upon a petition brought for the purpose, authorizing him to sell his wife's property and his marital interest in it, and divide the proceeds between himself and her, when he might abandon her the day after and thus his interest be extinguished? It seems to me that it clearly could not be done. If so, how can the same thing be accomplished by the suit of this petitioner, who acquired no greater interest by his supposed lien than the husband himself had?

Again, we have another statute which reads as follows: "No interest in real or personal estate, owned by a man in right of his wife, shall be taken by attachment or execution against him during the life of the wife or of any child which is the issue of their marriage, except for debts contracted by him for the support of herself or of such issue, after his acquiring such interest." Gen. Statutes, p. 456, sec. 11. This statute I think deprives the petitioner of the benefit which he seeks in this proceeding. It is true that the statute says that the property shall not be taken by attachment or execution against the husband, except in certain cases where the wife has substantially received the benefit of the indebtedness; still it can hardly be supposed that this remedial statute intended to allow the interest of the husband in the wife's property to be taken by one mode of procedure when it expressly denies another, and that too the common mode particularly adapted to the appropriation of property to pay an indebtedness, and especially when no good reason can be shown why a distinction should be made in this respect. It has been the policy of the law for many years to protect the property of the wife more and more from the debts of her husband, and consequently statutes having this end in view should receive a liberal construction; and such a construction, I think, brings this case within the operation of this statute.

It is manifest that a contrary construction would leave it in the power of the husband to deprive the wife of the benefit of his interest in her property in all cases, while the

statute very clearly contemplates a benefit to her in the preservation of her interest. The case in hand is a striking illustration of this truth; for it appears that the transaction of the husband out of which the lien arose, if it arose at all, was without the knowledge or consent of the wife. Hence if she could be deprived of the benefit of his interest in this case, it could be done in any other, and the protection intended to be given to the wife by this statute would be of no avail, although the implication arising from the last clause is exceedingly strong, that the husband's interest shall not be taken in any case whatsoever, unless the wife has received the benefit of the indebtedness. The language is "except for debts contracted by him for the support of herself," etc.

It may be said that statutes are passed exempting property from attachment and execution, when at the same time, if the owner should leave it with a mechanic for repairs, the latter would have a common law lien on it for the amount of his bill. But there is no real analogy between the two cases. If the owner of personal property should choose to encumber it, he would have no cause to complain. The exempting statutes were passed for his benefit alone, which benefit of course it would be in his power at any time to forego. But it is not so here. This statute was passed, not for the benefit of the husband, but solely for that of the wife; and the question is, can the husband incumber the exempted property belonging to the wife without her knowledge or consent? I think it cannot be done.

A casual examination of the case of *Fitch* v. *Baker*, 23 Conn., 563, may make the impression that the views here expressed are in conflict with the opinion of the court in that case; but a more careful examination will show that there is no disagreement. The statute then existing was as follows:—" The interest of a married man in the real estate of his wife, belonging to her at the time of their intermarriage, or which she may have acquired by devise or inheritance during coverture, shall not be liable to be taken by

execution against him during the life of the wife." Act of 1845; Rev. of 1849, p. 273, sec. 7. It was not pretended in that case that the property belonged to the wife at the time of her marriage, or that it came to her in either of the ways described in the statute; and consequently it was not protected from execution against the husband, nor from the attaching of a mechanic's lien upon a claim against the husband.