[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court are two actions that were consolidated for trial. The plaintiff in both actions is Peter J. Vartelas and the defendants are Eugene D. Micci, trustee and record holder of the trust land, and William Korolyshun, lessee of the trust land. In the first action, Vartelas seeks strict foreclosure and immediate possession of the land held in trust. In the second action, Vartelas asks the court to remove Micci from his position as trustee for failure to fulfill his duties to the trust beneficiaries, require Micci to provide an accounting for the trust, dissolve a lease agreement entered into by Micci and Korolyshun and to enter judgment against Korolyshun for trespass of the trust land. Micci brought a defamation action against Vartelas claiming that Vartelas made slanderous statements about him causing Micci emotional upset and distress and damages.
 FACTS
It appears that both parties are essentially in agreement and, for the purpose of this memorandum, the court sets out the following facts. On December 4, 1986, seven individuals entered into a trust agreement for the purpose of maintaining their interest in a sixteen acre parcel of land in Derby. The beneficiaries, and their respective shares, were: Eugene D. Micci, 20 percent; Joseph F. Monaco, Jr., 26.67 percent; Anthony Caridi, 6.67 percent; Clifford D. Hoyle, 13.33 percent; Michael Stella, 13.33 percent; John Sponheimer, 13.33 percent; and, Peter Vartelas, 6.67 percent. Micci was designated trustee. On the same day the trust was formed, the trust purchased and took possession of the land. On November 3, 1989, the trust refinanced the property by executing a note and mortgage to Great Country Bank. In 1991 and 1992, the trust failed to make payments and the bank declared the note in default. CT Page 3791
On March 5, 1992, the trust beneficiaries entered into a mortgage modification and assumption agreement with the bank. As a result of the agreement, the trust property was divided into two parcels. Parcel A is approximately thirteen acres and was conveyed to a new trust that included four of the previous trust beneficiaries, including Vartelas who was designated trustee. Vartelas eventually acquired full interest in Parcel A, now held by Division Properties, L.L.C., in which Vartelas and his wife are the shareholders. Caridi, Hoyle and Sponheimer assigned their interest in the original trust, now the trust for Parcel B, to Vartelas. Parcel B is the subject of the foreclosure action. The property, which was found to be contaminated, is now occupied by the defendant Korolyshun pursuant a ninety nine year lease agreement with Micci. Under the terms of the lease, Korolyshun's rent payment is $1.00 per year and payment of current and past property taxes on the property. After two bank mergers, First Union became the holder of the mortgage on Parcel B and, on September 18, 1998, First Union assigned the mortgage to Vartelas.
 FORECLOSURE ACTION
Vartelas, who now claims ownership of Parcel B, seeks foreclosure based on Micci's violation of several terms of the mortgage. To make out a prima facie case in a foreclosure action, a plaintiff must "prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the defendant has] defaulted on the note." WebsterBank v. Flanagan, 51 Conn. App. 733, 750-51, 725 A.2d 975 (1999).
First, Vartelas claims that the lease agreement between Micci and Korolyshun constitutes a default of the mortgage deed according to its paragraph thirteen, subsections (n) and (o), which require the mortgagee's written permission prior to the conveyance of an interest in the. property. (Joint Exhibit 3.) The lease agreement was signed on July 29, 1997, more than a year before the bank assigned its interest in Parcel B to Vartelas on September 18, 1998. (Joint Exhibit 12 and 9.) While Micci did transfer an interest in the property to Korolyshun, Micci's failure to obtain consent prior to entering into the lease agreement is of no consequence since Vartelas was not yet the mortgagee of Parcel B. For the same reason, Vartelas' claim that Micci violated the terms of the mortgage deed by collecting advance rent without Vartelas' written consent has no merit.
Vartelas further claims that Micci violated the terms of the mortgage deed by failing to pay taxes or maintain insurance on the property. From March 1992 to March 1997, Vartelas inadvertently paid taxes for Parcel B. (Joint Stipulation 18.) When he discovered his mistake, he notified the tax collector and acquired a refund for three of the five years. CT Page 3792 (Joint Exhibit 20.) Korolyshun, through an arrangement with the tax collector, now pays back taxes as agreed in his lease with Micci. (Joint Exhibit 21 and 12.) At the time of trial, the tax payments were not up to date and the City of Derby maintained a lien on the property. Korolyshun testified that he has insured the property yet no evidence of insurance was produced during the trial. Under the terms of the mortgage deed, paragraph thirteen, these actions constitute a default when the mortgagor fails to cure after receiving thirty days notice and demand. (Joint Exhibit 3.) Vartelas, however, testified that he was not aware if Micci received notice and demand to cure the various defaults and Vartelas failed to provide any evidence of such a notice to Micci.
Vartelas' claim for a foreclosure on the grounds of default under the terms of the mortgage is further undermined by the existence of the mortgage modification agreement, which was signed by all seven of the original trust beneficiaries on March 5, 1992. (Joint Exhibit 4.) In paragraph two of that agreement, the grantee waived all rights to call the mortgage as a result of any default in the performance of any of the terms of the mortgage except in the event of a subsequent sale of the property or any portion, or the failure of the borrowers to reimburse the grantee under the terms of the loan settlement agreement. (Id.) This provision applies to the grantee's assignee, Vartelas. (Id.) Consequently, Vartelas's claim for foreclosure on the grounds of default of various terms of the mortgage must also fail as there are no grounds upon which to grant the relief sought by the plaintiff.
 BREACH OF FIDUCIARY DUTY
In the second action, Vartelas claims that Micci failed to make an adequate accounting for the trust, violated the trust agreement by failing to obtain the consent of the trust beneficiaries before conveying the trust property to Korolyshun and breached his fidiciary duties to the trust beneficiaries. Vartelas further claims that the lease with Korolyshun is void and, as a result, Korolyshun is trespassing on the trust property. Vartelas seeks to have the court remove Micci from his position as trustee, for violations of his duties as trustee, and to order Korolyshun to cease trespassing on the property.
The trust agreement requires that the trustee make an annual accounting. (Joint Exhibit 11.) On May 29, 1998, Vartelas, through his attorney, sent a letter to Micci requesting an accounting for the trust. (Joint Exhibit 36.) In a letter dated June 4, 1998, Micci replied: "The last accounting to the partners was made in 1991. Since then, no accounting has been made because no funds were received or disbursed by the Trustee. The 1991 accounting was made after all funds had been exhausted by way of mortgage payments to Great Country Bank. In fact, the CT Page 3793 Trustee is aware of only three transactions of any type relating to the Trust property which have occurred since 1991. They are in chronological order, the transfer of the uncontaminated tract to Peter Vartelas Trustee, in early 1992, the filing of a final federal income tax return by Micci Trustee for the year 1992 and the receipt by Micci of a tax bill from the City of Derby in May or June of 1997." (Joint Exhibit 37.) Vartelas claims that Micci's response was an inadequate accounting for the trust. The court agrees. Pursuant to General Statutes § 52-401, which requires that in any judgment or decree for an accounting, the court shall determine the terms of the accounting, the court orders Micci to provide the current beneficiaries of the trust with an accounting of trust transactions since 1991. The accounting is to report all transactions on an annual basis with full disclosure of all of the trust's liabilities, including unpaid property taxes, and assets. The accounting should also report the lease transaction with Korolyshun and the rental fee arising from that transaction.
Vartelas also claims that Micci violated the trust agreement because the ninety nine year lease with Korolyshun constitutes a conveyance of the trust property in fee simple and the trust agreement requires Micci to obtain consent from 80 percent of the trust's beneficial interest before making such a conveyance. "A lease is a contract under which an exclusive possessory interest in property is conveyed." Clean Corp. v.Foston, 33 Conn. App. 197, 201, 634 A.2d 1200 (1993); see also MonarchAccounting Supplies, Inc. v. Prezioso, 170 Conn. 659, 663-64, 368 A.2d 6
(1976). "A lessee . . . holds a possessory interest and may enjoy the benefit of the property that it possesses." Il Giardino, LLC v. The BelleHaven Land Co., 254 Conn. 502, 519-20, 757 A.2d 1103 (2000).
Vartelas cites Lewis Oyster Co. v. West, 93 Conn. 518, 107 A. 138
(1919), and Brainard v. Colchester, 31 Conn. 407 (1863), for the proposition that the ninety nine year lease is the equivalent of a conveyance of fee simple ownership. In Lewis Oyster Co. v. West, supra,93 Conn. 523, the Supreme Court found that the trial court was correct in treating a ninety nine year lease as a violation of a covenant not to convey the property without giving the plaintiff the first right of refusal. In Brainard v. Colchester, supra, 31 Conn. 411, the court held that a lease for a term of 999 years was a conveyance in fee simple for the purpose of falling within the ambit of an 1859 statute requiring that a conveyance of real estate property in perpetuity should not be exempt from taxation. To the contrary, see, Osborne v. Humphrey, 7 Conn. 335
(1829); Goodwin v. Goodwin, 33 Conn. 314 (1866); Flannery v. Rohrmayer,49 Conn. 27 (1881); Dennis et al. Appeal, 72 Conn. 369 (1899). The court finds that the lease with Korolyshun is indeed a conveyance, but is merely a possessory interest and does not rise to the level of a conveyance in fee simple. The court also finds that the weight of the CT Page 3794 evidence, including testimony from beneficiary Michael Stella, indicates that Micci acquired the consent of 51 percent of the trust's beneficial interest before entering into a lease of the property with Korolyshun. For these reasons, the court declines to hold that Micci breached the trust agreement.
Vartelas further claims that Micci breached his duty as fiduciary. Micci, as trustee who holds legal title to property for the benefit of the beneficiaries, is a fiduciary. Horton v. Hydra SystemsInternational, Inc., 16 Conn. App. 420, 428, 547 A.2d 926 (1988). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Brackets omitted.) Murphy v. Wakelee,247 Conn. 396, 400, 721 A.2d 1181 (1998).
At trial, Vartelas testified that when he found Korolyshun on Parcel A in 1998, Korolyshun said that he had purchased Parcel B for $50,000. Vartelas testified that later Korolyshun repeated this statement several more times. During his own testimony, Korolyshun said that he told Vartelas that he had leased or purchased the property, but denies that he told anyone that he paid Micci a finder's fee. Korolyshun testified that he paid realtor Joseph F. Monaco, another trust beneficiary, a finder's fee of $25,000. Although Korolyshun claims that he gave a copy of the canceled check to his attorney, the document was never produced. Micci testified that Korolyshun paid Joseph F. Monaco $25,000, but that Micci never received any money as a result of the transaction and, unfortunately, Joseph F. Monaco has since deceased.
The court acknowledges the lack of evidence and contradiction in testimony regarding a $25,000 payment to Micci from Korolyshun. In any event, both the defendants admitted that Korolyshun paid $25,000 to trust beneficiary Joseph F. Monaco as a realtor's fee. Micci claimed that the amount of the fee was justified and the trust beneficiaries received adequate consideration from the lease agreement in that Korolyshun agreed to insure the property and pay current and back taxes. The court disagrees. "The law governing the duties of a trustee respecting investment of trust assets is well settled. Generally, a trustee must act with the care of a prudent investor." United States Trust Co. v. Bohart,197 Conn. 34, 48, 495 A.2d 1034 (1985). In 1997, the state legislature codified the prudent investor rule and expanded the duty of a trustee to include: that the trustee shall invest and manage the trust assets solely in the interest of the beneficiaries, General Statutes § 45a-541e; that the trustee shall act impartially toward the beneficiaries in CT Page 3795 investing and managing the trust assets, General Statutes § 45a-541f; and, that a trustee may only incur costs that are appropriate and reasonable, General Statutes § 45a-541g.
The court finds that Micci, by entering into a ninety nine year lease agreement with a minimal rent payment, authorizing a significant payment to one of the beneficiaries at the exclusion of the others, failing to pay taxes on the property, failing to provide an accounting to the beneficiaries, and withholding information, has violated the law and breached his duty as trustee. For this reason, the court orders the removal of Micci as trustee and that he be replaced by one of more persons elected by the current beneficiaries of the trust.
Finally, Vartelas claims that the lease with Korolyshun is void and that Korolyshun is a trespasser on Parcel B. As noted above, the court finds that Micci exceeded his authority as trustee when he entered into a lease of ninety nine years, a period which would extend beyond the lifetimes of the beneficiaries. The interests of the beneficiaries should not be disregarded and is an important consideration in determining the duration of leases which a trustee has authority to execute. Russell v.Russell, 109 Conn. 187, 204, 145 A. 648 (1929). Although the court finds that Micci exceeded his authority in executing the lease, the lease itself is not void. Based on the evidence at trial, the court believes that Korolyshun entered into the lease based upon Micci's apparent authority to bind the trust in the lease agreement and, accordingly, declines to abrogate the lease agreement between Micci, as trustee, and Korolyshun.
 DEFAMATION COUNTERCLAIM
Micci testified that Vartelas told prominent individuals in the community that Micci received a kickback from Korolyshun when Micci leased Parcel B. Micci claims that these statements constitute defamation and that he is entitled to actual and punitive damages because Vartelas made these statements with malice. During previously mentioned testimony, Vartelas said Korolyshun told him that he paid a finders fee of $50,000 for the property and this was the basis for Vartelas' statements to others. Korolyshun testified that he never told this to Vartelas.
The court finds that Micci fails to establish an actionable claim. Micci did not allege or provide evidence of special damages which limits "his claim to one of slander per se. "Having . . . alleged or proven no special damages, the plaintiff here is limited to a recovery of general damages on a showing that the utterance was slanderous per se." Moriarityv. Lippe, 162 Conn. 371, 382-83, 294 A.2d 326 (1972). "When the CT Page 3796 defamatory words are actionable per se, the law conclusively presumes the existence of injury to the [claimant's] reputation. He is required neither to plead nor to prove it." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 35, 662 A.2d 89 (1995). "Whether words are actionable per se is a question of law for the court." Milesv. Perry, 11 Conn. App. 584, 602, 529 A.2d 199 (1987). A slander "is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business. . . . Under this category, spoken words are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity. . . ." (Citations omitted.) Zeller v. Mark,14 Conn. App. 651, 655, 542 A.2d 752 (1988). The court concludes that the statements made by Vartelas do not constitute slander per se and, therefore, judgment may enter for the plaintiff in the counterclaim.
BY THE COURT,
Ripley, J. Judge Trial Referee