CHARLES P. COGSWELL *vs.* THE SECOND NATIONAL BANK OF NORWICH.

Second Judicial District, Norwich, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

A national bank is not exempt from the operation of State laws, provided they do not impair its efficiency in performing those functions by which it was designed to serve the United States, nor trench upon the field occupied by the legislation of Congress.

The special provisions made by Congress for the winding up of national banks—by receivers appointed under authority of the United States—were not designed to exclude proceedings within the ordi-

Cogswell *v.* Second National Bank.

nary jurisdiction of courts of equity, to enforce rights of a solvent national bank against those who have mismanaged or are mismanaging its affairs.

Accordingly, where the charter of such a bank has expired and its affairs are being wound up by its officers who, acting in the interest of another bank, are wrongfully and fraudulently appropriating or wasting its property and especially certain assets which had previously been charged off and set apart with the approval of the Comptroller of the Currency as a trust fund for the benefit of the then existing stockholders, it is within the power of the Superior Court, in rendering final judgment upon an application of one or more of the stockholders interested in such trust fund, to appoint a receiver to wind up the affairs of the bank and to collect and pay over the assets so charged off to the persons entitled to receive them.

Whether the appointment of a temporary receiver for that purpose, by a judge of the Superior Court in chambers, prior to the return day, would be in violation of the Revised Statutes of the United States, § 5242, forbidding a State court to issue any attachment, injunction or execution against such a bank or its property before final judgment in the suit, *quære.*

In the present case such an appointment was made on May 5th, during vacation, but no appeal was taken from the order, nor was it made a reason of appeal after final judgment. In June following, the temporary receiver so appointed died, and a second temporary receiver to fill the vacancy was appointed by the Superior Court. *Held* that the real purpose and effect of the June appointment was to recover the bank's assets, already in the custody of the court, from the personal representatives of the deceased receiver; and that the appointment was an act beneficial to the bank, the equity and validity of which it was in no position to challenge—upon the ground that the Federal statute above mentioned was violated—after so long a tacit acquiescence in the order of May 5th.

It is not necessary that a cause should be determined upon its merits before a temporary receiver is appointed.

When judicial authority is vested by statute in a judge of a court, its exercise at chambers is the exercise of the judicial authority of that court.

For the proper liquidation of its affairs, a national bank exists after the termination of its charter period, and for such purpose may sue and be sued.

An objection because of a claimed defect of parties should be taken in the trial court. It is too late to raise the objection here for the first time.

An objection that a stockholder's complaint against the corporation fails to aver any effort to obtain redress from his fellow stockholders, or from the directors, must be raised by special demurrer.

Argued October 20th—decided December 18th, 1903.

ACTION for the appointment of a receiver to wind up the affairs of a national banking association, and to collect certain assets which, as alleged, its managers had wrongfully charged off or disposed of; brought to the Superior Court for New London County. An application for the appointment of a temporary receiver was made to *Hon. John M. Thayer*, a judge of the court, in vacation, by whom a plea in abatement and to the jurisdiction, and afterwards a demurrer to the application, were overruled and the application granted. On the coming in of the Superior Court, a demurrer to the complaint was filed, pending which the temporary receiver, after having filed an application for confirmation and a permanent appointment, died, and a successor was appointed (*Robinson, J.*) as temporary receiver. Three days later the demurrer was overruled (*Robinson, J.*) and, the defendant refusing to plead over, this temporary appointment was made permanent. *No error.*

*William H. Shields* and *Donald G. Perkins*, for the appellant (defendant).

*Solomon Lucas* and *Gardiner Greene*, for the appellee (plaintiff).

BALDWIN, J. That a national banking association derives its franchise from the United States does not exempt it from subjection to such State laws as do not impair its efficiency in performing those functions by which it was designed to serve the United States, nor trench upon a field occupied by Congressional legislation. *National Bank* v. *Commonwealth*, 9 Wall. 353, 362; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283, 287; *Easton* v. *Iowa*, 188 id. 220, 238. Jurisdiction of suits by or against such associations, " except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national banking associations may be doing business

when such suits may be begun." 22 U. S. Stat. at Large, p. 163, § 4. For the purpose of all actions by or against them, at law or in equity, they are to "be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State," saving only " the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank." 25 U. S. Stat. at Large, p. 436, § 4. For winding-up proceedings, in case of insolvency or certain other defaults on the part of the corporation, Congress has made special provision by means of a receiver appointed under authority of the United States. U. S. Rev. Stat. §§ 5141, 5191, 5201, 5205, 5208, 5234; 19 U. S. Stat. at Large, p. 63; *Cook County National Bank* v. *United States*, 107 U. S. 445, 448. These statutes were not designed to exclude proceedings within the ordinary jurisdiction of courts of equity, to enforce rights of a solvent national bank against those who have mismanaged or are mismanaging its affairs. *Richmond* v. *Irons*, 121 U. S. 27, 48.

The complaint in the case at bar is by a shareholder in the national banking association known as the Second National Bank of Norwich. The bank is the sole defendant. It is alleged that in 1900 its capital was reduced from 3,000 to 2,000 shares and certain of its choses in action charged off and set apart by direction of the Comptroller of the Currency for the benefit of those who up to that date had been the holders of the 3,000 shares, of whom the plaintiff is one; that certain property was held by certain trustees in trust for the payment of said choses in action; that the bank, in 1901, sued these trustees for an accounting; that in 1902 one Jerome and one Perkins obtained control of the affairs of the bank, for the purpose, among other things, of defeating said suit and preventing such an accounting, and did in fact afterwards succeed in effecting a withdrawal of the suit; that they made a fraudulent sale of the choses in action secured by the trust fund, for an inadequate consideration;

that they are wrongfully appropriating or wasting all the property of the bank in confederacy with certain others, and particularly with the Thames Loan and Trust Company to which they have transferred its banking house and principal business; that the defendant's charter expired by limitation on February 24th, 1903, and it now exists only for purposes of liquidation; and that the confederates named are arranging to transfer all its assets and use its good will "to serve the interest of said Thames Loan and Trust Company; and the winding up of the affairs of the defendant bank will be delayed and its funds will get intermingled with the funds of the said Thames Loan and Trust Company; and the plaintiff is in great danger of irreparable injury and loss of property, will be subjected to great expense in litigation to ascertain what disposition has been made of the assets of the defendant bank and of those charged off as aforesaid, and by confusion of accounts it will be at least very difficult if not impossible to ascertain the exact facts, unless relieved by the interposition of this honorable court as a court of equity and a receiver is appointed, and the plaintiff is without adequate remedy at law."

The sole claim is that, by way of equitable relief, "a receiver be appointed of the defendant bank with the power to wind up its affairs under the eye of this court; and to collect the assets of said defendant bank that were charged off as aforesaid; and pay them to such as are entitled to receive them."

We have no occasion to inquire whether there was error in any of the proceedings had before the judge of the Superior Court in vacation, for none is assigned in the reasons of appeal.

The Superior Court was first called upon to act at a regular session by the application of Charles W. Carter, the temporary receiver, appointed in vacation, made in pursuance of directions given in the order appointing him, for a confirmation of such appointment and also for appointment as permanent receiver. Before it was heard the applicant died, and the plaintiff filed another application suggesting

Cogswell v. Second National Bank.

the death, and asking for the immediate appointment of some one else as a permanent receiver. A series of written objections to either a temporary or a permanent appointment, filed by the defendant, were all overruled, and a temporary receiver appointed.

The first of these objections was that the court, under General Statutes, § 1052, had no jurisdiction or power to make any appointment. That section provides that ". . . if any receiver . . . dies, the court that appointed him, or, if such court is not actually in session, a judge thereof, may fill the vacancy." When judicial authority is vested by statute in a judge of the Superior Court, its exercise at chambers is the exercise of the judicial authority of that court. *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 241. The appointment of Carter as temporary receiver was, therefore, within the meaning of the section cited, made by the Superior Court. The plaintiff's application was made after a demurrer to his complaint had been filed, and before a hearing upon it. The court found that the exigencies of the case required the appointment of a temporary receiver to fill the vacancy occasioned by death. It was manifestly proper, under such circumstances, to appoint no permanent receiver until the merits of the complaint had been finally determined; and there is nothing in the Rules of Court, p. 23, § 51, to forbid it.

The next objection taken, which was that no receiver, either temporary or permanent, could be appointed before disposing of the demurrer, was properly overruled. If a temporary receiver could never be appointed before a decision on the merits of the cause, the field of equitable relief would be greatly and unreasonably narrowed.

The third objection was founded on U. S. Rev. Stat. § 5242, which reads as follows: "All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of

money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

In view of these provisions the defendant's claim was that no receiver, either temporary or permanent, to take possession of its property, could be appointed before final judgment in the cause, inasmuch as the appointment would operate as an equitable execution, and be tantamount to an injunction touching the disposition of its property.

The decretal part of the order of appointment made by the Superior Court, on June 23d, 1903, after overruling these objections, was couched in these terms:—

"1. That the Honorable Lewis Sperry, of South Windsor in this State, be and he is hereby appointed to fill such vacancy, as temporary receiver of the Second National Bank of Norwich, and the assets and property thereof and of the assets charged off, as in the complaint in said action alleged, until further order of this court or a judge thereof, with full power and authority to take possession and charge of the property, affairs, and assets of said defendant corporation, and to wind up its affairs, and of the assets and property charged off as in the complaint in this action is alleged, under the direction of the court or a judge thereof.

"2. That the said Lewis Sperry be required to furnish a bond in the sum of ten thousand dollars with good and sufficient surety to be approved by this court or a judge thereof, and to file the same with the clerk of the Superior Court for said County of New London.

"3. From and after the filing and acceptance of said bond, said temporary receiver is hereby authorized and directed to take possession of all the property and assets of said the Second National Bank of Norwich and of the assets charged off

as aforesaid and the proceeds thereof, and to proceed under the direction of this court with the winding up of the affairs of said banking association, and the collecting of said charged-off assets, until further order of the court in the premises, and the officers and liquidating committee of said Second National Bank and the administrator of the estate of said Charles W. Carter are hereby ordered, upon demand of said receiver, to deliver to him all property and assets of said defendant bank and said charged-off assets."

The statute which has been quoted forbids the issue of any attachment, injunction, or execution under authority of a State court against any national banking association whether solvent or insolvent. *Pacific National Bank* v. *Mixter*, 124 U. S. 721, 727. But was the order complained of process of that nature, when considered in view of the exigencies which in the judgment of the court made it proper, and of the effect which it could practically have? The original order of appointment was made at chambers on May 5th, 1903. It contained directions to the temporary receiver to take possession of the defendant's assets, and to its officers and liquidating committee to deliver them to him on demand, similar to those in the order of June 23d. These directions, it must be presumed, in the absence of anything in the record to the contrary, were promptly obeyed. The order superseded the power of the directors to proceed with the liquidation of the affairs of the bank, as effectually as if they had been in terms enjoined against so doing. *Bank of Bethel* v. *Pahquiogue Bank*, 14 Wall. 383, 400. When, then, the first temporary receiver died, it is to be assumed that he had in his hands all the defendant's assets. His death necessarily threw them into the possession of the administrator upon his estate. The real purpose and effect of the order, therefore, was to recover them, as speedily as possible, from his personal representatives, so that they could be held and disposed of, under the supervision of the court, for the benefit of all who were legally entitled to participate in the proceeds. If, therefore, the order passed in chambers can be considered as erroneous, because in violation of the

---

Act of Congress,·it does not follow that the order appointing the second receiver was. That deprived the defendant of the possession of nothing, for it then held nothing in its possession. It sequestered no assets in favor of any particular creditor; for the plaintiff, though suing alone, in effect sued for the benefit of all those similarly interested in the funds, and of all creditors who might come in and show a right to share in any of the assets held by the receiver. *Richmond* v. *Irons*, 121 U. S. 27, 44. In its mandate for the delivery of the defendant's property to the receiver by its officers and liquidating committee and the administrator of the estate of Charles W. Carter, the reference to its officers and liquidating committee did it no harm, since the former order, which ran against them in the same way, had long before been fully executed. The court issued its process to preserve a fund, already in its hands under a decree to which no exception has been taken, from risk of loss by the accident of death. It ·was an act for the benefit of the bank, the equity and validity of which it was in no position to deny on the ground in question, after so long a tacit acquiescence in the order of May 5th, and which, as it did not affect it injuriously, would not, even if erroneous, support the appeal. General Statutes, § 802.

The fourth objection was that the bank had no corporate existence for the purpose of being sued in this action. Under 22 U. S. Stat. at Large, p. 164, § 7, national banking associations, upon the expiration of the term for which they are incorporated, do not cease to exist, but their franchise is "extended for the sole purpose of liquidating their affairs until such affairs are finally closed." For the proper. liquidation of their affairs, it is obviously necessary that they should retain the capacity of suing and being sued, and the statutory extension of the franchise accomplishes that result.

The fifth objection was that the Superior Court had no power to appoint a receiver to wind up a national bank, at the instance of a stockholder. This is true so far as concerns such causes of action as are by Act ·of Congress made the foundation of winding-up proceedings to be brought

under the authority of the United States. . For other causes of action Congress has left the State courts free to grant relief of that nature whenever the general rules of equity may be deemed to call for it. *Merchants & Planters National Bank* v. *Trustees*, 63 Ga. 549; 65 id. 603; *Elwood* v. *First National Bank*, 41 Kan. 475. The plaintiff sues not merely as a shareholder but as a *cestui que trust* with respect to a specific fund. His general rights as a stockholder had also been enlarged by the expiration of the term of full corporate activity of the bank. It was no longer a going concern. It was kept in life only that its affairs might be wound up, and his complaint stated a case which sufficiently justified him in seeking to have it wound up and the special trust fund administered by others than those who were found in control.

The sixth objection was that the alleged special trust fund never existed, because the directors had no authority to create it. No proof appears to have been offered in support of this contention, and it seems to have been rested solely on what is disclosed on the face of the complaint. It is there averred that the fund was set apart for the benefit of the original shareholders at the time when they consented to a reduction of capital, and by direction of the comptroller of the currency. No reduction of capital could have been made without the approval of that officer (U. S. Rev. Stat. § 5143), and it was fairly within his authority to condition his approval on the adoption of such measures as he might think proper to do justice to the holders of the original shares.

The seventh, and last, objection taken, was that there was adequate remedy at law. This was manifestly untenable. The plaintiff was suing both as a *cestui que trust*, and as a shareholder. As a *cestui que trust* he was but one of many similarly situated in respect to a special trust fund, and for his general rights as a shareholder he could claim the assistance of the courts only because the corporation was controlled by those acting in bad faith, and so could not or would not sue for its own protection.

Error is next assigned in overruling the demurrer to the complaint. The causes of demurrer specified were identical with the fourth, fifth, sixth, and seventh objections made to the appointment of a temporary receiver. They were properly held insufficient for the reasons already stated.

The only remaining reason of appeal is a general claim of error in rendering the final judgment and appointing a permanent receiver. The complaint having been adjudged sufficient and the defendant having refused to plead over, it was proper to grant the relief asked for in the plaintiff's claim so far as it might appear to be sanctioned by the principles of equity, upon the facts admitted by the demurrer.

An action brought to secure the appointment of a receiver must show some equity for the enforcement of which such an appointment furnishes an appropriate means. An equity of this nature, growing out of matters of trust, fraud, and account, is sufficiently alleged. *Barber* v. *International Co. of Mexico*, 73 Conn. 587, 593, 594. The claim for relief, though in form single, is in effect threefold. What it demands, to restate it in proper order (and there was no demurrer to it for formal defects), is, first, that the fund set apart for the benefit of the plaintiff and the other original stockholders be recovered and duly applied ; second, that the affairs of the defendant be wound up under the direction of the court instead of that of those who had gained the control of it and were using their power for improper purposes ; and third, that a receiver be appointed to accomplish these ends. If the appointment as made operated as an execution, attachment or injunction, within the meaning of U. S. Rev. Stat. § 5242, it was not in violation of that section, since not made before but as part of the final judgment in the cause.

It is contended that the judgment was unwarranted on account of a defect of parties. Even had this objection been taken in the trial court, it would not have been fatal. General Statutes, § 622. Having been taken here for the first time, it comes too late. No party is absent whose presence is absolutely indispensable.

Nor is there anything in the claim that the complaint

fails to show any effort by the plaintiff to get redress within the corporation by an appeal to his fellow stockholders or to the directors. This point could only have been raised on a special demurrer, and no such cause of demurrer was assigned.

There is no error.

In this opinion the other judges concurred.