JAMES A. MASTERTON, EXECUTOR, ET ALS. *v.* THE LENOX REALTY COMPANY (1832).

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 10—decided July 16, 1940.

*Frederick H. Wiggin,* with whom were *Frank E. Callahan* and *Harrison F. Turnbull,* for the appellant (defendant).

*Thomas R. Robinson,* with whom were *James E. Connor* and *Vincent P. Dooley,* for the appellees (plaintiffs).

JENNINGS, J. The plaintiffs, holders of 10 per cent of the stock of the defendant, applied for the appointment of a receiver of the defendant under General

Statutes, § 3467, printed in part in the footnote.[1] As is not infrequently the case, the hearing on the appointment of a temporary receiver was, by stipulation, made a full trial on the merits. Sufficient cause was found and a receiver was appointed. The questions raised by the appeal are: did the plaintiffs properly represent the required 10 per cent of the stock, should an appraisal of the minority interest have been made, is the finding supported by the evidence and was prejudicial error committed in any rulings incorporated in the appeal?

The finding, summarized for present purposes, is as follows: The defendant, The Lomas and Nettleton Company and The Lomas and Nettleton Mortgage Company are all Connecticut corporations. The Lomas and Nettleton Company was originally engaged in the business of mortgage investments but has for some time been changing to that of the management of real estate, from which it derives a substantial profit. In connection with its business it collected commissions on insurance and made a small profit

---

[1] Sec. 3467. RECEIVERSHIP. Whenever any corporation having a capital stock has wilfully violated its charter or exceeded its powers, or whenever there has been any fraud, collusion or gross mismanagement in the conduct or control of such corporation, or whenever its assets are in danger of waste through attachment, litigation or otherwise, or such corporation has abandoned its business and has neglected to wind up its affairs and to distribute its assets within a reasonable time, or whenever its stockholders or directors have voted to discontinue its business, or whenever any good and sufficient reason exists for the dissolution of such corporation, any stockholder or stockholders owning not less than one-tenth of its capital stock may apply to the superior court in the county wherein such corporation is located, for the dissolution of such corporation and the appointment of a receiver to wind up its affairs. Said court may, if it shall find sufficient cause, appoint one or more receivers to wind up the business of such corporation, and may at any time, for sufficient cause shown, make a decree dissolving such corporation and terminating its corporate existence.

in supplying materials and supplies for properties under its management. Such commissions as were collected and profits made on property owned by the defendant were not credited to the latter. The defendant was organized by The Lomas and Nettleton Company and its officers and directors to make second mortgages on properties on which the latter held first mortgages. The Lomas and Nettleton Mortgage Company was organized by the same parties to engage in the same business as The Lomas and Nettleton Company and the defendant but more particularly to acquire, hold and deal in mortgage notes secured by mortgages of the defendant and The Lomas and Nettleton Company and otherwise to act as depository for various forms of property.

Kenneth E. Nettleton, Sydney W. Gould and Donald E. Nettleton were officers and directors of all three companies. They also owned or controlled all of the common stock of each. Only the common stock had voting power. The Lomas and Nettleton Company owns 60 per cent of the preferred stock of the defendant. The business of each of these corporations and all of their corporate acts were done through the same individuals as officers and directors and practically all of their agents and employees were paid by The Lomas and Nettleton Company whether the agent or employee was acting for one corporation or the other . Thus all three occupy the same offices in a building owned by the defendant. Only The Lomas and Nettleton Company pays rent. The amount is fixed by Nettleton, Gould and Nettleton, acting as officers of The Lomas and Nettleton Company and is agreed to by the same individuals as officers of the defendant.

The defendant has outstanding 4450 shares of preferred and 100 shares of common stock, each of the

par value of $100. The plaintiffs own 655 shares of the preferred stock. Certain of the plaintiffs owning 221 shares, included above, signed proxies which were voted to place the defendant in voluntary dissolution prior to the bringing of this action but thereafter elected to proceed with the present action to terminate the existence of the defendant by means of a receivership. The dissolution proceedings voted by the stockholders and directors were in progress up to the time of the appointment of the receiver. The trustees in dissolution were the same three individuals named above.

Since 1929, the defendant has become the owner of the equity in thirty-five separate properties. It was the general policy of Nettleton, Gould and Nettleton, acting for the defendant, to turn the management of the property acquired, with an assignment of rents, over to The Lomas and Nettleton Company, Trustee, as soon as title was secured. Since 1936, twenty-six of these properties have been conveyed to The Lomas and Nettleton Company, Trustee, and two to The Lomas and Nettleton Company, without substantial consideration. The other seven properties were foreclosed by The Lomas and Nettleton Company, Trustee, in which cases no attempt was made by impartial appraisal or the employment of counsel to protect the equity of the defendant. In one case Gould signed an affidavit of debt on behalf of The Lomas and Nettleton Company and a stipulation on behalf of the defendant calling for a redemption period of eleven days. There were substantial equities in some of these properties.

In January, 1938, Nettleton, Gould and Nettleton determined to dissolve the defendant and began to depreciate its assets and preferred stock. Extensive repairs at an expense of approximately $20,000 were

made on the office building owned by the defendant and it was then, for the first time in seven years, depreciated on its books. They also used the defendant as a convenience in creating a market for their operations in the stock of the defendant and of The Lomas and Nettleton Company. Gould, called by the plaintiffs, testified evasively, frequently withholding information called for by the questions propounded to him. Nettleton, Gould and Nettleton acted throughout in the interest of The Lomas and Nettleton Company from which they received large salaries and dividends.

Many facts have been omitted from this summary as unnecessary to support the conclusion of the trial court that the interests of the defendant so conflict with those of Nettleton, Gould and Nettleton that they are unfit and improper persons to act as trustees in liquidation of the defendant.

Two of the numerous claims of the defendant relate to conditions precedent to the maintenance of this action by the plaintiffs. It was admitted that in order to make up the 10 per cent of stock required to bring the action, it was necessary to include shares of stock held by stockholders who had previously signed proxies to be voted for voluntary dissolution under General Statutes, § 3470. The defendant claims that this was a binding election of remedies and that the stockholders in question waived their right and are estopped to ask for the appointment of a receiver. There was no evidence or finding that these stockholders knew of the situation disclosed by the allegations of their complaint in this action when they signed the proxies. A choice between two remedies in ignorance of the true state of facts does not constitute a binding election. *National Transportation Co., Inc.* v. *Toquet*, 123 Conn. 468, 480, 196 Atl. 344. Under these cir-

cumstances these stockholders neither waived their rights nor were they estopped to assert them.

Shortly before the trial of the case was started The Lomas and Nettleton Company, as owner and holder of shares of the preferred capital stock of the defendant, made application under § 3469 of the General Statutes for a valuation of the plaintiffs' shares of stock. The statute provides that the court may for sufficient cause shown appoint persons to make the appraisal. No evidence was offered by The Lomas and Nettleton Company and there is no basis for finding that the court abused its discretion in denying the application.

Coming now to the main questions raised by the appeal, the principal contention of the defendant is that the essence of the complaint is the allegation that the assets of the defendant have been wasted and are in jeopardy, that the finding, as corrected, does not support these allegations and that the judgment appointing a receiver is therefore erroneous. It denies that there are any allegations in the complaint putting it on notice that other delinquencies of the director-trustees would be put in issue. It is, of course, true that allegations of the complaint must support the judgment in this, as in other actions. See *Massoth* v. *Central Bus Corporation*, 104 Conn. 683, 687, 134 Atl. 236.

The complaint sounds in fraud. In addition to the allegation that equities of the defendant in properties owned by it were sacrificed by the machinations of the directors, it contains allegations that a receiver should be appointed to investigate the acts, conduct and management of the director-trustees of the defendant to determine whether any recovery from The Lomas and Nettleton Company or its officers and directors should be attempted and that the acts of

the directors and officers of the defendant were for their own benefit and advantage and to the prejudice of the defendant. The record discloses that the plaintiffs were obliged to rely almost entirely upon the evidence of one of the officers of the defendant to prove their case. As it developed, conflicts of interest increasingly appeared. While the complaint would undoubtedly have been drafted along broader lines had the plaintiffs been cognizant, at the time when it was drawn, of the evidence which they eventually elicited, the allegations referred to are sufficiently inclusive to make the inquiry into the general conduct of the officers of the defendant relevant. If the defendant thought the pleading was defective in this respect, it was readily susceptible of cure by amendment. If it wished to take advantage of this situation, it should have done so seasonably, by objection to evidence on that ground or otherwise. *McCaughey* v. *Smiddy,* 109 Conn. 417, 418, 146 Atl. 822.

It is to be noted that this is not an attempt to interfere with the management of a going concern and to put an end to its activities. The affairs of defendant were being liquidated and the only question was whether that liquidation should proceed under the control of its director-trustees or under that of a receiver appointed by the court. There is a distinction between the two methods. In statutory dissolution, the proceedings "although under the direction of the court, are not the formal proceedings of a statutory receivership, but are informal proceedings which do not bring the assets of the corporation into the custody of the law." *Willmann* v. *Walsh,* 96 Conn. 79, 84, 112 Atl. 804.

The general rule governing the dissolution of a corporation under the statute invoked in this case is as follows: "Whenever any good and sufficient reason

exists, the court may decree a dissolution. What will be a good and sufficient reason must be left to the good judgment of the court. No fixed rule can be established fitting each case, since the facts of each differ. . . . Whether the decree shall pass or not will depend largely upon the situation and condition of the corporation, and whether the court can see that it can thereafter be carried on pursuant to its charter, and with equal justice to all of its stockholders." *Sheehy* v. *Barry*, 87 Conn. 656, 662, 89 Atl. 259. "The determinative inquiry is whether, considering all the circumstances, the affairs of the corporation should continue to be managed and wound up by those in control of it or, instead, it appears that those in control are so using their power that the property of the corporation should be taken over and administered under the direction of the court. . . . The application for a receiver is addressed to the sound legal discretion of the court, to be exercised with due regard to the relevant statutes and rules, and such exercise is not to be disturbed lightly nor unless abuse of discretion or other material error appears." *Chatfield Co.* v. *Coffey Laundries, Inc.*, 111 Conn. 497, 501, 150 Atl. 511. The fact that the defendant was in voluntary dissolution does not prevent the application of the statute. *Cogswell* v. *Second National Bank*, 76 Conn. 252, 56 Atl. 574; 16 Fletcher, Cyclopedia of Corporations, § 8202. Proof of directors' misconduct prior to voluntary dissolution may be considered. *American Surety Co.* v. *Great White Spirit Co.*, 58 N. J. Eq. 526, 531, 43 Atl. 579.

Most of the arguments of the defendant should have been, and doubtless were, addressed to the trial court. In view of the finding, summarized above, we cannot hold that it abused its discretion in appointing a receiver in this case. The admitted conflict of

interest. resulting from the fact that the director-trustees of the defendant were also the directors and officers of three closely related corporations, one of which was rather summarily taking over the assets of the defendant, would alone make it doubtful whether an abuse of discretion could be found. When this is considered in connection with the specific acts of those officers involving the vital interests of the defendant, the decision reached by the trial court is abundantly justified.

Much of the long record is concerned with the question whether there was any equity in the properties transferred by the defendant to The Lomas and Nettleton Company without substantial consideration. Our determination, briefly stated, is that the trial court could conclude that it was reasonably probable that equities were sacrificed.

The rulings relating to the inspection of the records of The Lomas and Nettleton Company are not involved in the determinative conclusion reached. The issuance of execution forthwith was within the sound discretion of the trial court. The finding justifies the course taken. The objection to a reappraisal, one having been made under court order while the directors were acting as trustees in dissolution, is not good in view of the mandatory provisions of Rule 237, Practice Book, p. 75.

There is no error.

In this opinion the other judges concurred.