SIDNEY J. HORTON ET AL. *v.* HYDRA SYSTEMS
INTERNATIONAL, INC.
(6108)

BORDEN, NORCOTT and FOTI, Js.

Argued June 1—decision released September 27, 1988

*David M. Reilly,* for the appellants (plaintiffs).

*Willard R. Carter* filed a brief for the appellee (defendant).

FOTI, J. The plaintiffs[1] appeal from the judgment of the trial court dismissing the first count of their complaint and denying part of the relief sought by their second count. The plaintiffs entered into an agreement to act as promoters for the defendant corporation, which had been formed in 1982 for the purpose of manufacturing and marketing a laser sighting device for guns. The plaintiffs incurred significant debt as a result of their efforts to raise money for the corporation. Nevertheless, by March, 1986, the corporation was insolvent. This action was then initiated in two counts: the first count sought the appointment of a receiver for the corporation; the second count sought an order compelling the corporation to recognize the plaintiffs' rights to hold and vote stock and to compel the issuance of such shares to the plaintiffs, along with an order compelling the chairman of the board of directors to hold a stockholders meeting.

After an evidentiary hearing on the plaintiffs' application for the appointment of a temporary receiver pursuant to General Statutes § 52-504,[2] the trial court,

---

[1] Theodore G. Booth is the other plaintiff in this appeal.

[2] General Statutes § 52-504 provides: "When any action is brought to or pending in the superior court in which an application is made for the appointment of a receiver, any judge of the superior court, when such court is not in session, after due notice given, may make such order in the action as the exigencies of the case may require, and may, from time to time, rescind and modify any such order. The judge shall cause his proceedings to be certified to the court in which the action may be pending, at its next session."

*Mulcahy, J.,* denied the defendant's motion to dismiss for lack of standing which alleged that the plaintiffs were not shareholders of the defendant corporation. The trial court concluded that the plaintiffs had demonstrated a colorable claim, the minimal requirements of standing for the purpose of the court's subject matter jurisdiction. The court also denied the plaintiffs' application for the appointment of a temporary receiver.

After a hearing on the merits, the trial court, *Fracasse, J.,* dismissed the first count of the complaint concluding that the plaintiffs lacked standing, and granted, in part, the relief sought under the second count, ordering the corporation to issue 1800 shares of nonvoting stock to the plaintiffs as trustees for future purchasers of stock. The plaintiffs claim that the court erred (1) by concluding that the plaintiffs lacked standing to seek the appointment of a receiver for the corporation because they were merely trustees of 1800 shares of stock, (2) in failing to find that a receiver should have been appointed, (3) by finding that the plaintiffs had given no consideration for shares in the corporation, and (4) in dismissing the first count of the complaint pursuant to Practice Book § 302 for failure to establish a prima facie case.[3] Our conclusion that the plaintiffs' first claim of error is meritorious is dispositive of this appeal.

The following facts are relevant to this appeal. The defendant is a stock corporation organized under the laws of the state of Delaware, the certificate of incorporation having been filed with the secretary of state of the state of Connecticut on or about March 16, 1982.

---

[3] The dismissal of the first count of the complaint was not pursuant to Practice Book § 302, but pursuant to Practice Book § 145, which provides: "Any claim of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

The corporation's principal place of business and office have always been located at 375 Howard Avenue in Bridgeport, Connecticut. The officers at the inception of the corporation were: Frederick Stevens, president and chief executive officer; Theodore G. Booth, vice president; and Sidney J. Horton, secretary. Stevens also served as chairman of the board of directors. The authorized number of shares of common stock was 10,000, with a par value of $1 per share. Horton and Booth are the plaintiffs in this action.

Stevens, who had obtained the exclusive rights to manufacture, lease and sell a laser sighting device from its inventor and patent holder, prepared and circulated a document outlining his proposal to manufacture and market the device in order to attract investors. As a result, Horton and Booth became interested and, on May 24, 1982, the three men entered into a written agreement that provided in part: (1) "Horton/Booth shall receive in trust for future investors 55% of the stock and Stevens shall receive 45% of the stock in Hydra [the defendant herein] upon execution of this agreement, at which time all original notes totalling $70,000 from Stevens to Horton/Booth shall be returned marked 'Cancelled.' "; (2) the plaintiffs would raise capital of up to $750,000 in eight months and, if funds in excess of that amount were needed, they would be obtained through bank loans; (3) all corporate records and documents would be delivered to the secretary or the corporate attorney; and (4) Stevens would assign to Hydra the exclusive rights to the laser sighting device that he held and that the corporation would assume all of Stevens' responsibilities and obligations under the agreement by which he obtained the rights to manufacture and market the device. Forty-five hundred shares of Hydra stock were issued to Stevens; the remaining shares were not issued directly to Horton and Booth, but were issued to subsequent purchasers as sales were made.

Through the sale of 3700 shares of stock, capital in excess of $700,000 was raised for the corporation by Horton and Booth. Two demand notes amounting to $275,000 were executed by Hydra, and were personally guaranteed by Horton, Booth and Stevens. At the time of trial, an action was pending in the Superior Court for default on both of these notes.

After problems developed in almost every aspect of the business, the plaintiffs gave notice of a directors meeting on November 11, 1985, to be held at the office of the corporation. At Stevens' direction, the plaintiffs were denied admission to the corporate headquarters. The plaintiffs, in accordance with the terms of the notice, adjourned to the Race Brook Country Club and conducted the meeting there. The plaintiffs, two of the three directors, using blank certificates because the stock book was in the possession of Stevens, voted to issue stock certificates number three and number four to themselves, each certificate representing 900 shares. Stevens later refused to recognize these 1800 shares as validly issued and maintained that although 10,000 shares were authorized, only 8200 shares had been issued. He claimed controlling interest in the corporation as the owner of 4500 shares. The plaintiffs argued, by contrast, that they and the remaining shareholders exercised majority control with 55 percent of the 10,000 shares and that it was the intent of the May 24, 1982 agreement to keep control from Stevens.

On or about December 2, 1985, a shareholders meeting was held at the office. At that time, the board of directors was increased from three to five members, with two members to be selected by Stevens and the remaining three by the shareholders. After two of the five directors resigned late in December, 1985, the plaintiffs demanded, in writing, that a meeting of stockholders be held to fill those vacancies or to elect a new board of directors. A directors meeting was subse-

quently called and, pursuant to the bylaws, two new directors were appointed by the remaining directors. On December 26, 1985, other shareholders made a written demand for a special shareholders meeting for the election of a new board. Stevens, who controlled the board, refused to honor this demand.

At the time of trial, substantially all of the defendant's employees had resigned or had been terminated, the defendant had ceased the manufacture and the distribution of the laser device, and federal liens had been placed against it for failure to properly pay withholding and social security taxes. The defendant had unpaid long term obligations in the amount of $458,750, and there had not been a stockholders meeting since December 2, 1985, even though the bylaws required stockholders meetings every thirteen months.

The plaintiffs' principal claim of error, and the claim we find dispositive, is that the court erred in concluding that the plaintiffs were not shareholders and thus lacked standing to petition the court for the appointment of a receiver for the corporation. In reaching that conclusion, the court relied in part on the fact that there was "no evidence that Horton and Booth [had] purchased stock" and in part on its conclusion that, as holders in trust of 1800 shares of stock for future investors, the plaintiffs were not entitled to vote the shares and, therefore, were not shareholders. The court also relied on the fact that the May 24, 1982 agreement was silent regarding the plaintiffs' status.

" 'Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.' *Hiland* v. *Ives*, 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966)." *Ardmare*

*Construction Co.* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 74 (1983). "Standing . . . is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." *Maloney* v. *Pac,* 183 Conn. 313, 320, 439 A.2d 349 (1981).

We begin our review of the issue of standing with an analysis of the language of the May 24, 1982 contract which determined the responsibilities of the parties and outlined the benefits they were to receive. "Where rights, duties and obligations are fully stated in a written contract between the parties, the court is obligated to determine the intention of the parties from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Kronholm* v. *Kronholm,* 16 Conn. App. 124, 130, 547 A.2d 61 (1988). Contracts are to be construed as a unified whole, giving all relevant provisions due consideration. *Albert Mendel & Son, Inc.* v. *Krogh,* 4 Conn. App. 117, 123, 492 A.2d 536 (1985); *Fletcher-Terry Co.* v. *Grzeika,* 1 Conn. App. 422, 431, 473 A.2d 1227 (1984).

Paragraph one of the May 24, 1982 agreement provides in part that "Horton/Booth shall receive in trust for future investors 55% of the stock and Stevens shall receive 45% of the stock in Hydra upon execution of this Agreement."[4] A total of 10,000 shares were autho-

---

[4] Paragraph one of the agreement provides in full: "HORTON/BOOTH shall receive in trust for future investors 55% of the stock and STEVENS shall receive 45% of the stock in Hydra upon execution of this Agreement at which time all original notes totalling $70,000.00 from STEVENS to HORTON/BOOTH shall be returned marked 'Cancelled.' Hydra will execute demand notes for $70,000.00 to HORTON. HORTON/BOOTH shall

rized, of these 4500 shares, 45 percent, were issued to Stevens. The remaining 5500 shares, 55 percent, were not expressly issued to the plaintiffs. Rather than issue the shares in the plaintiffs' names, the shares were issued directly to subsequent purchasers. Following this procedure, the plaintiffs sold 3700 shares to investors in their efforts to raise capital for the corporation pursuant to the agreement. Thus, at the time of trial, there were 1800 authorized shares that had not been technically issued. The trial court concluded, and we agree, that as of the date the agreement was executed, the plaintiffs were entitled to the 1800 shares as trustees for future purchasers. This interpretation of the agreement was not contested by the defendant at trial.[5]

Thus, the remaining question is whether, in their capacity as trustees, the plaintiffs had standing to petition for the appointment of a receiver. Again, we turn to the language of the agreement to determine whether the parties expressed any intent as to the status of the plaintiffs. Paragraph four provides in part: "The parties shall enter into a stockholder's agreement provid-

raise up to $750,000.00 within 8 months as the need is demonstrated. Of that amount, $25,000.00 has been received from ALPHONSE MASSARI as payment for his interest in Hydra stock to be delivered by HORTON/BOOTH. If funds in excess of $750,000.00 are required, they will be obtained by bank loans or prorata from the stockholders."

[5] After the defendant conceded that the plaintiffs were entitled to the disputed 1800 shares, the court ruled in favor of the plaintiffs on the second count of their complaint and ordered the defendant to deliver a stock certificate representing the 1800 shares to the plaintiffs. The court's ruling on the second count of the complaint has not been appealed by the defendant.

The defendant does not expressly contest any of the plaintiffs' arguments on appeal. In fact, the defendant's brief consists of a one page recitation of the facts and an argument comprised of two sentences. Although we need not rule on whether such a brief technically complies with the requirements set forth in Practice Book § 4066, it clearly does not comply with its spirit. The failure to respond to the appellant's arguments necessarily places an appellee at a disadvantage and places an unwelcome burden on this court.

ing for the right of first refusal by the corporation and then the other shareholders for the stock of any shareholder wishing to sell his stock, and also providing for a board of directors of 3 members, who shall be STEVENS, HORTON and BOOTH." As Stevens, Horton and Booth were the only parties to the agreement it is self evident that this provision expresses the signers' understanding that each was a shareholder. Thus, the trial court's conclusion that the agreement was silent as to the plaintiffs' status is clearly erroneous. We note that there is no provision in the agreement that limits the scope of the plaintiffs' status as shareholders.

We conclude, that as trustees for future purchasers of the shares, the plaintiffs were fiduciaries and, as such, had standing to petition the court for the appointment of a receiver. A trustee is "[t]hat person in a trust relationship who holds legal title to the property subject to the trust, for the benefit of the beneficiary . . . with certain powers and subject to certain duties imposed by the terms of the trust." Ballentine's Law Dictionary (3d Ed.). As trustees, therefore, the plaintiffs were fiduciaries. See *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 745 n.15, 44 A.2d 196 (1982) (fiduciary includes such relationships as executor, administrator, trustee and guardian); *Zuch* v. *Connecticut Bank & Trust Co.*, 5 Conn. App. 457, 462, 500 A.2d 565 (1985) (trustee stands in fiduciary relationship with beneficiary of trust).

Our statutes governing the voting rights of shareholders provide that each outstanding share is entitled to vote unless otherwise provided by the certificate of incorporation; General Statutes § 33-324 (a);[6] and,

---

[6] General Statutes § 33-324 (a) provides: "Each outstanding share, regardless of class, shall be entitled to one vote on each matter submitted to shareholders for action, unless, and except to the extent that, voting rights of shares of any class are increased, limited or denied by the certificate of incorporation."

"[u]nless the instrument appointing a fiduciary or creating a fiduciary relationship otherwise provides, *a fiduciary has full voting powers with respect to the securities held by him.*" (Emphasis added.) General Statutes § 33-311a (d).[7] Delaware law similarly provides that a "[p]erson holding stock in a fiduciary capacity shall be entitled to vote the shares so held." Del. Code Ann. tit. 8, § 217. The May 24, 1982 agreement did not place any limitation on the scope of the plaintiffs' trusteeship. Absent such a limitation, General Statutes § 33-311a (d) makes the conclusive presumption that fiduciaries have the right to vote. As fiduciaries, the plaintiffs had the statutory right and the common law duty to vote the 1800 shares to "protect the trust beneficiaries' interests in the corporation." *Hall* v. *Dichello Distributors, Inc.*, 6 Conn. App. 530, 541, 506 A.2d 1054, cert. denied, 200 Conn. 807, 512 A.2d 230 (1986).

We note that paragraph two of the May 24, 1982 agreement provides that if the plaintiffs failed to meet the schedule for raising capital established by paragraph one of the agreement,[8] then the plaintiffs would "retain the stock which they have already received. Additionally, after [such] default Stevens shall have the option to purchase, at original cost, the shares held by Horton/Booth and/or their nominees." The "stock which they have already received" refers to the original 55 percent of the stock which was issued to them as trustees for future investors. The express language of this provision supports our conclusion that the plain-

---

[7] General Statutes § 33-311a (d) provides in full: "Unless the instrument appointing a fiduciary or creating a fiduciary relationship otherwise provides, a fiduciary has full voting powers with respect to securities held by him. If securities stand of record in the name of the fiduciary, the corporation may treat such fiduciary as entitled to vote the same unless the secretary of the corporation is given written notice that the fiduciary is not so authorized and is furnished a copy of the instrument or order appointing the fiduciary or creating the fiduciary relationship wherein it is so provided."

[8] See footnote 4, supra.

tiffs were shareholders as it manifests the parties' understanding that the plaintiffs owned, in trust, 55 percent of the shares and that they would become the beneficial owners of these shares if they failed to meet the schedule established for raising capital. Thus, the plaintiffs stood as both legal owners of the 1800 shares and as potential beneficial owners of these shares, and, as such, the plaintiffs' interest in preventing waste was grounded in both of these capacities.

We conclude that there is no basis for the trial court's conclusion that the plaintiffs were not shareholders and, therefore, lacked standing to petition the court for the appointment of a receiver for the corporation. To the contrary, as trustees of the remaining 1800 shares, the plaintiffs had a fiduciary duty to seek appointment of a receiver to prevent waste of the corporate assets. See generally 5 W. Fletcher, Cyclopedia of Corporations (Perm. Ed. 1976) § 2035.

We next consider whether a Connecticut court has jurisdiction to appoint a receiver for a foreign corporation. We note at the outset that the plaintiffs did not petition the court for the dissolution of the corporation; General Statutes § 33-381; or for the winding up of the corporation; General Statutes § 33-382; nor were they seeking appointment of a receiver under the court's statutory authority; General Statutes § 33-383; as these provisions are limited to corporations incorporated in this state and, therefore, do not reach foreign corporations. See *Low* v. *Pressed Metal Co.*, 91 Conn. 91, 95, 99 A. 1 (1916).

Rather, the plaintiffs rely on the equitable jurisdiction of the court. It has long been the law in this state that "courts do have jurisdiction over the subject-matter of winding up the local business of foreign corporations in receivership proceedings, whether in a stockholders' suit or upon a creditor's bill. It would be

an intolerable proposition to assert that any local business was beyond the original equity jurisdiction of our courts merely because it was conducted by a foreign corporation." Id., 95–96; *Stolman* v. *Boston Furniture Co.,* 120 Conn. 235, 243, 180 A. 507 (1935). "The principle that courts will not interfere in what are vaguely called the internal affairs of a foreign corporation, must yield to the larger and more important principle that all who choose to engage in business within the State . . . necessarily subject such business to the jurisdiction of the courts as fully as if it were conducted by our own citizens or corporations"; *Low* v. *Pressed Metal Co.,* supra, 96; "and it follows that, so far as this injunction is reasonably necessary to protect the property and property rights of the plaintiffs in this State, it is a proper exercise of jurisdiction, although it incidentally controls, to that extent, the conduct of some of the officers of a foreign corporation." *White* v. *Greene,* 96 Conn. 265, 272, 114 A. 112 (1921).

A receiver of a corporation will be appointed by a court of equity "as a measure ancillary to the enforcement of some recognized equitable right." *Barber* v. *International Co. of Mexico,* 73 Conn. 587, 593, 48 A. 758 (1901). " 'The determinative inquiry is whether, considering all the circumstances, the affairs of the corporation should continue to be managed and wound up by those in control of it or, instead, it appears that those in control are so using their power that the property of the corporation should be taken over and administered under the direction of the court. . . . *Cogswell* v. *Second National Bank,* [76 Conn. 252, 262, 56 A. 574 (1903)]. The application for a receiver is addressed to the sound legal discretion of the court, to be exercised with due regard to the relevant statutes and rules, and such exercise is not to be disturbed lightly nor unless abuse of discretion or other material error appears.'

*Chatfield Co.* v. *Coffey Laundries, Inc.,* 111 Conn. 497, 501, 150 A. 511 [1930]." *Masterton* v. *Lenox Realty Co.,* 127 Conn. 25, 33, 15 A.2d 11 (1940).

"A receiver is properly appointed when there are such dissensions in the governing body of a corporation . . . that the corporation ceases to function in the manner provided for by its own by-laws and in accordance with the statutes relating to corporations." *Krall* v. *Krall,* 141 Conn. 325, 335, 106 A.2d 165 (1954).

In this case, the corporation had ceased to function as a viable economic enterprise. At the time of trial, substantially all of its employees had been discharged or had resigned. It had ceased meeting its financial obligations and at least one action is pending in Superior Court for foreclosure on notes executed by the plaintiffs and the corporation. Stevens had not called a stockholders meeting as required by the corporation bylaws, and had refused to hold elections for two directorships. Thus, it would be well within the equitable authority of the Superior Court to appoint a receiver for the corporation in this case.

We conclude that the plaintiffs did not lack standing, and our resolution of this claimed error is dispositive of this appeal. Although the plaintiffs have raised other claims, it is not clear that those errors will recur in the new trial. Therefore, we decline to review them.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.