[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE
On October 31, 1996, the plaintiff, Michael Weinshel, filed an eleven count second amended complaint against the defendants, Capossela, Cohen, Engelson Colman, P.C. (professional corporation); Capossela, Cohen, LLC; Capossela, Cohen, LLC d/b/a Capossela, Cohen, Engelson, Colman, LLC; Daniel J. Fusco; Lewis X. Cohen, Paul A. Romaniello, Jr.; Harold N. Miller; Philip V. Marinaccio; Michael Jelormine, Pat Corcoran; and, Nathaniel S. Yordon.[1] The plaintiff is a certified public accountant and a former employee of the professional corporation. The individual defendants are shareholders of the professional corporation.
Essentially, the plaintiff claims that the defendants have failed to make certain "buy out" payments owed to the plaintiff following the plaintiff's departure from the professional corporation; have failed to pay the plaintiff the value of his stock in the professional corporation; and, have violated various Connecticut corporation laws in their effort to frustrate the plaintiff's attempts to collect these sums.
On November 16, 1996, the defendants filed an answer, a single special defense, and eleven counter/cross claims,[2]
A review of the record reveals the following pertinent facts. In 1971, the plaintiff joined the accounting firm of Capossela, CT Page 6546 Cohen, Engelson Colman. In 1976, the firm incorporated as a professional corporation under the name Capossela, Cohen, Engelson Colman, P.C. At this time, the plaintiff became a 19% shareholder in the professional corporation.[3] The plaintiff worked at the professional corporation until December 1994.
On January 18, 1996, the professional corporation filed an amendment to its certificate of incorporation, changing its name from Capossela, Cohen, Engelson Colman, Professional Corporation, to C.C.E. C., P.C. At some point prior to December 4, 1996, a new entity, Capossela, Cohen, LLC was formed and began using the name Capossela, Cohen, Engelson Colman, LLC. ("the limited liability company").[4] Also at some point prior to December 4, 1996, the professional corporation transferred its furniture, fixtures and equipment to the limited liability company in exchange for a promissory note in the amount of $31,000. This promissory note is payable over five years.
On December 4, 1996, the shareholders of the professional corporation held a meeting where holders of 81% of the shares of the professional corporation voted: (1) to ratify the amendment of the certificate of incorporation changing the name of the professional corporation; (2) to ratify the transfer of furniture, fixtures and equipment of the professional corporation to the limited liability company; and (3) to adopt a plan of dissolution for the professional corporation. At this meeting, the plaintiff, who held 19% of the shares of the corporation, voted against all three of the aforementioned measures.
The plaintiff filed an "Application for Injunctive and Other Relief" dated December 21, 1996. This application seeks a "temporary and permanent injunction" enjoining the professional corporation from amending its certificate of incorporation in order to change its name to C.C.E. C., P.C.; from transferring its assets to Cohen, Capossela, LLC; and, from adopting a plan of dissolution for the professional corporation. The application also seeks a "mandatory injunction" ordering: that the professional corporation revoke the amendment filed with the secretary of state seeking a name change; that the limited liability company return to the professional corporation any and all assets it has received from the professional corporation; and, that no contract between the professional corporation and the limited liability company be performed. Finally, the application seeks the appointment of a receiver to wind up the business and affairs of the professional corporation. This CT Page 6547 application for injunctive relief is presently before the court.
DISCUSSION
The gravamen of the plaintiff's application is that the defendants did not properly amend the certificate of incorporation to change the professional corporation's name, transfer the professional corporation's assets, and decide to dissolve the professional corporation. The plaintiff argues that he is entitled to the requested relief because the defendants have violated various sections of the Stock Corporation Act, General Statutes § 33-282, et seq.[5] Accordingly, the plaintiff requests that the court issue an injunction and appoint a receiver. The defendants respond that the court should neither issue an injunction nor appoint a receiver because the defendants have satisfied the applicable statutory requirements.
Temporary injunctions "preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." Clinton v. Middlesex Mutual Assurance Company,37 Conn. App. 269, 270, 655 A.2d 814 (1995). "An injunction is a harsh remedy." Leo Foundation v. Cabelus, 151 Conn. 655, 657,201 A.2d 654 (1964). The granting of a temporary injunction is within the court's discretion, however, the party seeking the injunction must first demonstrate: one, that his remedy at law is inadequate; two, that without the injunction, he will suffer irreparable injury; three, that he is likely to succeed on the merits of his claim; and four, that a balancing of the equities favors the party seeking the injunction. Waterbury TeacherAssociation v. Freedom of Information Commission, 230 Conn. 441,446, 645 A.2d 978 (1994); Connecticut Association of ClinicalLaboratories v. Connecticut Blue Cross. Inc., 31 Conn. Sup. 110,113, 324 A.2d 288 (1973).
"The purpose of receivership, ordinarily, is to preserve and protect property pending the outcome of litigation." HartfordFederal Savings and Loan v. Tucker, 192 Conn. 1, 7, 469 A.2d 778
(1984). When a court considers whether to appoint a receiver, "[t]he determinative inquiry is whether, considering all the circumstances, the affairs of the corporation should continue to be managed and wound up by those in control of it or, instead, it appears that those in control are so using their power that the property of the corporation should be taken over and administered under the direction of the court. . . . The application for a receiver is addressed to the sound legal discretion of the court, CT Page 6548 to be exercised with due regard to the relevant statutes and rules. . . ." (Citations omitted; internal quotation marks omitted.) Horton v. Hydra Systems International, Inc.,16 Conn. App. 420, 431, 547 A.2d 926 (1988).
I. The Name Change The Sale of Assets
The plaintiff argues that the defendants violated General Statutes §§ 33-360, 33-307[6] and 33-285[7] when they attempted to change the professional corporation's name by amending its certificate of incorporation without stockholder approval. Additionally, the plaintiff claims that the defendants violated General Statutes § 33-372 and 33-307 when they attempted to sell the professional corporation's furniture, fixtures and equipment to the limited liability company without stockholder approval.
General Statutes § 33-360 (b) provides, in pertinent part, "(3) the board of directors and shareholders may at any time, and from time to time, amend the certificate of incorporation in the following manner: The board of directors, either before or after shareholder adoption thereof, shall adopt an amendment resolution and the shareholders shall adopt a similar resolution by the affirmative vote of the shareholders in accordance with subsection (c) of this section. . . ." Subsection (;) provides, in pertinent part, that "the required vote of shareholders, or of any class of shares entitled to vote as a class, for approval of an amendment to the certificate of incorporation pursuant to subdivision (3) of subsection (b) of this section, shall be the affirmative vote of at least two-thirds of the voting power of the shares, or of each class of shares, entitled to vote thereon."
General Statutes § 33-372 (d) provides in pertinent part, that "[a]ny sale of all or substantially all the assets of a corporation, if not made in the usual and regular course of its business, shall be made upon such terms and conditions and for such consideration as may be authorized by its board of directors and by the affirmative vote of the holders of at least two-thirds of the voting power of the outstanding shares of each class, whether or not otherwise entitled to vote."
In the present case, the amendment changing the professional corporation's name was filed on January 18, 1996, and, the sale CT Page 6549 of the professional corporation's furniture, fixtures, and equipment occurred at some point prior to December 4, 1996. However, the shareholders did not vote to approve these items until December 4, 1996.
The defendants' claim that the subsequent shareholder vote "ratified" the earlier actions of the directors and thereby satisfied §§ 33-360 and 33-372. The dispositive issue therefore, is whether the December 4, 1996 shareholder vote effectively ratified the amendment changing the professional corporation's name.
"Authorization is official approval or permission. . . . Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account. . . . Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances." (Citation omitted; emphasis omitted; internal quotation marks omitted.) CMG Realtyof Connecticut, Inc. v. Colonnade One, 36 Conn. App. 653, 659,653 A.2d 207 (1995). "If the officers or the agents of a corporation assume to act for the corporation without any authority at all, or if they exceed their authority or act irregularly, and the act is one which could have been authorized in the first instance by the stockholders, board of directors or subordinate officers, as the case may be, it may be expressly or impliedly ratified by them, and thus be rendered just as binding, except as to intervening rights of third persons, as if it had been authorized when done, or done regularly." Cohen v. Holloways' Inc.,158 Conn. 395, 407-08, 260 A.2d 573 (1969). "[R]atification . . . binds the stockholder to the same extent that original authority by a vote would have done." Barrows v. Natchaug Silk Co.,72 Conn. 658, 665, 45 A. 951 (1900); see Beazley Co. Realtors v.Business Park Associates, Superior Court, judicial district of New London, Docket No. 52 39 77 (November 6, 1992, Teller, J.). "The shareholders of a corporation may ratify and validate acts done or authorized by the board of directors, but which were beyond the powers of the directors, or acts done or authorized by the directors at an illegal meeting, or unauthorized acts of others than the directors, provided the acts are such as may be done or authorized by the shareholders. Such ratification relates back to the time of the act and is thus the equivalent of original authority. . . . The shareholders may ratify unauthorized or irregular acts of the directors . . . by vote at a shareholders' meeting. . . ." 2A Fletcher, Cyclopedia CT Page 6550 Corporations § 764 (Perm. Ed.). "As a general rule, in the absence of actual fraud, the stockholders may ratify any act or contract . . . of the corporation which they might have authorized in the first instance." 19 Corpus Juris Secundum, Corporations § 609.
In the present case, the shareholders voted to approve the amendment to the certificate of incorporation changing the professional corporation's name, and, the sale of the professional corporation's furniture, fixtures and equipment by a three-fourths majority on December 4, 1996. This majority is in excess of the two-thirds majority required under §§ 33-360 and 33-372. This amendment to the professional corporation's certificate of incorporation and the sale of the professional corporation's assets were validly ratified by the shareholders. Accordingly, the plaintiff cannot demonstrate the likelihood of his success on the merits as required to obtain an injunction and the plaintiff's application to enjoin the professional Corporation's name change and sale of assets to the limited liability company is denied. See Waterbury Teacher's Associationv. Freedom of Information Commission, supra, 230 Conn. 446;Connecticut Associates of Clinical Laboratories v. ConnecticutBlue Cross, Inc., supra, 31 Conn. Sup. 113.
II. The Dissolution
The plaintiff seeks to enjoin the dissolution of the professional corporation, and in the alternative, requests that the court appoint a receiver to supervise the winding up of the professional corporation.
The plaintiff argues that the defendants have attempted to dissolve the professional corporation in violation of General Statutes § 33-376. Section 33-376 (c) provides that "[a] corporation may, at any time, be dissolved by resolution adopted by the board of directors and shareholders in the following manner: The board of directors, either before or after shareholder adoption thereof, shall adopt a resolution to dissolve and the shareholders shall adopt such resolution by the affirmative vote of the holders of at least two-thirds of the voting power of the shares entitled to vote thereon, or by such other vote of shareholders, which may be less than a majority, as the certificate of incorporation shall provide." The plaintiff claims that a two-thirds majority of shareholders failed to adopt a resolution dissolving the professional corporation. However, CT Page 6551 the facts of this case indicate that a four-fifths majority of shareholders voted to dissolve the professional corporation at the December 4, 1996 shareholders meeting. The shareholders properly ratified the dissolution of the professional corporation, and therefore, the court denies the plaintiff's application to enjoin the dissolution of the professional corporation.
Alternatively, the plaintiff seeks the appointment of a receiver to control the winding up of the professional corporation pursuant to General Statutes §§ 33-381,[8]
33-382[9] and 33-383[10]. "The application for a receiver is addressed to the sound legal discretion of the court. . . ."Chatfield Co. v. Coffey Industries, Inc., 111 Conn. 497, 501,150 A. 511 (1930).
Essentially, the plaintiff is a minority shareholder in the professional corporation who opposes the change of the professional corporation's name, the sale of the professional corporation's assets, and the dissolution of the professional corporation. "[D]isagreement and dissension among stockholders is not in itself sufficient ground for a corporate receivership. "Krall v. Krall, 141 Conn. 325, 331, 106 A.2d 165 (1954); Martinv. Martin's News Service, Inc., 9 Conn. App. 304, 311,518 A.2d 951 (1986), cert. denied, 202 Conn. 807, 520 A.2d 1287 (1987). Furthermore, the plaintiff has not demonstrated that any good and sufficient reason exists to appoint a receiver.
CONCLUSION
Therefore, for the foregoing reasons, the plaintiff's application for a temporary injunction and for the appointment of a receiver is hereby denied.
Dated this 6th day of June, 1997.
STEVENS, JUDGE